UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>JESUS RAMOS,<br>    Defendant. | C.A. No. 18-092-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Before the Court is Defendant Jesus Ramos' Motion to Suppress evidence obtained through a series of three interrelated searches. Mr. Ramos challenges the validity of the searches under the Fourth Amendment. The first search was of Mr. Ramos' cell phone records, including cell-site location information ("CSLI"). The second search was of Mr. Ramos' apartment, conducted when the police executed an arrest warrant for him. The third search was a more in-depth examination of Mr. Ramos' apartment, conducted after the police secured a search warrant. For the reasons below, the Court GRANTS Mr. Ramos' Motion to Suppress. ECF 24.

I. BACKGROUND

In Spring 2018, the Drug Enforcement Administration ("DEA") surveilled a home on Ford Street in Providence, R.I. ("Ford St. Property") and one of its residents because it suspected that illegal narcotic activity was taking place there. The DEA

came to believe that the resident was Mr. Ramos based on its observation of him and an informant's tip that Mr. Ramos was residing in the area of Ford Street.

The DEA and the Boston Police Department ("BPD") met with the Rhode Island State Police ("State Police") to discuss their drug investigation and suspicions that the individual under surveillance was Mr. Ramos. In their meetings, the DEA and BPD informed the State Police that Mr. Ramos had an extraditable arrest warrant from Massachusetts for several drug- and firearm-related offenses. Massachusetts issued this warrant when Mr. Ramos removed a global position satellite monitor pending trial for those offenses. The DEA and BPD also informed the State Police that Mr. Ramos had two state convictions for drug distribution and trafficking, and that Mr. Ramos had falsified his identity.[1] Additionally, the DEA relayed information from an informant to the State Police that Mr. Ramos was using cell phone number 508-649-XXXX.

The State Police took two steps to continue the DEA's investigation of the Ford St. Property and to establish a link between Mr. Ramos and the Property. First, it conducted a check of property and utility records that gave W&W Realty LLC as the property owner, and showed electric accounts in the names of Catalino Ramos Polanco[2] and Earl Raymond. Second, State Police officers tested white residue found

---

[1] The Government contends that Ramos provided falsified Puerto Rican identification documents during a prior arrest in Boston, and that the Department of Homeland Security recently established his real identity as Santo Marcio Duverge Aybar of Bani, Dominican Republic.

[2] This name appears in the affidavit supporting the request for a physical search warrant (ECF 35-2 at 4), though the same document later refers to an

2

in plastic baggies in the trash outside the Ford Street Property and identified traces of cocaine therein.

After the trash pull, the State Police obtained a warrant from a Rhode Island magistrate to obtain records and CSLI for cell phone number 508-649-XXXX. In support of the warrant request, Detective Ryan Santo filed an affidavit stating that a credible, confidential source had linked Mr. Ramos to the 508-649-XXXX number. ECF 37-1 at 4. A search of that number's CSLI subsequently showed its location to be at or near the Ford Street Property.

Having established a link between the cell phone number believed to belong to Mr. Ramos and the Ford Street Property, the State Police and Providence Police executed the arrest warrant for Mr. Ramos. Upon arrival at the Ford Street Property, the police encountered Mr. Ramos' landlord, Ramon Polanco. Mr. Polanco identified Mr. Ramos as his downstairs tenant and opened the locked door to Mr. Ramos' apartment with a key. The police found Mr. Ramos in his bed and arrested him.

The Government's factual account of the events following Mr. Ramos' arrest diverges from Mr. Ramos'. The Government claims that the police searched Mr. Ramos' bathroom and two closets. In addition, the Government's affidavit supporting a subsequent physical search describes a scale with white residue found inside a large kitchen cabinet, implying a search of the cabinet. Evidence uncovered during the search, per the Government's memorandum, includes a kilo press and red cellophane

---

individual similarly named Ramon Polanco. ECF 35-2 at 8. The Court assumes both names refer to the same person, who is later introduced as Ramos' landlord.

3

in one closet. Furthermore, the Government alleges that the police spotted another kilo press in plain view, outside the back door to the apartment. In contrast, Mr. Ramos asserts that no evidence cited in the affidavit was in plain view during the police's search, but rather was uncovered during it.

Following their preliminary search of Mr. Ramos' apartment, the State Police sought and obtained a search warrant for the property. To justify this warrant, the State Police cited the DEA's prior surveillance of the property and of Mr. Ramos, their search of the trash cans, Mr. Ramos' criminal history and arrest warrant, and their warrantless search after arresting Mr. Ramos. A more in-depth search conducted pursuant to the physical search warrant revealed a variety of evidence that Mr. Ramos now seeks to suppress. In Mr. Ramos' several filings in support of his Motion to Suppress, he contends that the first and third searches (under valid warrants) were unsupported by probable cause, and that the second (warrantless) search was overbroad.

## II. STANDARD OF REVIEW

The Fourth Amendment protects citizens against, *inter alia*, unreasonable searches and seizures of their homes. U.S. Const. amend. IV. The first issue here is whether the Government's warrants for Mr. Ramos' cell records and for his apartment were constitutionally valid: that is, whether they were supported by probable cause. Searches without warrants supported by probable cause, including searches of the home, are generally presumed unreasonable and thus unconstitutional. *Kentucky v. King*, 563 U.S. 452, 459 (2011); *United States v. Dion*,

859 F.3d 114, 131–32 (1st Cir. 2017) (expounding the probable-cause standard in the First Circuit). In 2018, the Supreme Court extended the probable-cause requirement to include searches of CSLI. *See Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018).

The second issue is whether the police's search of Mr. Ramos' apartment, conducted during his arrest and before the issuance of a search warrant for the apartment, was constitutionally valid. The parties argue that either the search-incident-to-arrest doctrine or the protective-sweep doctrine should apply. *See Arizona v. Gant*, 556 U.S. 332 (2009) (search-incident-to-arrest doctrine); *Maryland v. Buie*, 494 U.S. 325 (1990) (protective-sweep doctrine); *United States v. Delgado-Pérez*, 867 F.3d 244 (1st Cir. 2017) (protective-sweep doctrine). *See also Chimel v. California*, 395 U.S. 752 (1969) (laying out the modern basis for the search-incident-to-arrest doctrine). However, for the reasons explained below, the Court finds that the State Police's entry into Mr. Ramos' apartment was unconstitutional and thus needs not address the warrantless search's validity under either doctrine.

If a Fourth Amendment violation is found, a court reviewing a motion to suppress must then determine whether to apply the exclusionary rule. The rule is a "last resort," only properly applied when the deterrent effects of its application outweigh the sizable social costs. *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Furthermore, several categorical exceptions to the exclusionary rule exist. While the Government has not briefed them in its filings, the Court considers three here: the independent-source exception, the good-faith exception, and the inevitable-discovery

exception. *See Davis v. United States*, 564 U.S. 229, 238 (2011) (good-faith doctrine); *Murray v. United States*, 487 U.S. 533, 537 (1988) (independent-source doctrine); *Nix v. Williams*, 467 U.S. 431, 443–444 (1984) (inevitable-discovery doctrine).

III. DISCUSSION

    A.    The CSLI Search

Mr. Ramos argues first that the Government lacked probable cause to obtain a search warrant for his CSLI. The Court agrees because the affidavit justifying the search warrant relied on one conclusory statement alone, and thus lacked a reasonable basis for probable cause.

In adopting a totality-of-the-circumstances approach to testing probable cause for search warrants, the Supreme Court said that the standard is a "fluid concept," "not readily . . . reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). In turn, the First Circuit has determined that probable cause exists when "'the facts and circumstances as to which police have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that evidence of a crime will be found.'" *United States v. Silva*, 742 F.3d 1, 7 (1st Cir. 2014) (quoting *Robinson v. Cook*, 706 F.3d 25, 32 (1st Cir. 2013)).

In *Illinois v. Gates*, the police conducted an investigation prompted by an anonymous informant's tip-off that the defendants were engaged in drug trafficking. In assessing whether probable cause for a later search of the defendants' home and car existed, the Court emphasized that the tip-off alone was an insufficient basis for finding probable cause. *See Gates*, 462 U.S. at 227. Instead, the Court found that a

substantial basis for finding probable cause existed only because the information had been partially corroborated and because the credibility of the informant could be determined. *Id.* at 246.

Because a CSLI search is a Fourth Amendment search under *Carpenter v. United States*, the police must give a substantial basis for a magistrate judge to find probable cause of criminal evidence in the "location" (number) searched. Additionally, the First Circuit has held that when the "primary basis" for a search is information from a confidential informant, law enforcement must give the reviewing magistrate a basis for determining the informant's credibility. *United States v. White*, 804 F.3d 132, 136 (1st Cir. 2015). Here, the police decided to search the cell records and CSLI for 508-649-XXXX because a "credible confidential source" had linked the number to Mr. Ramos, a known fugitive. ECF 37-1 at 4. The only connection between the site of the search (the 508 number) and potential criminality (Mr. Ramos) was the State Police's conclusory assertion that its informant was credible. It provided no reason for the reviewing magistrate to conclude that the informant was credible, as required by *United States v. White*. Moreover, it gave no other information that might lead the magistrate to link the phone number to criminal activity, like the corroboration in *Gates* established. The CSLI search warrant for the 508 number thus lacked probable cause.

B. The Apartment Entry

Warrantless entry of a home is presumptively invalid under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980). An arrest warrant may

satisfy the warrant requirement for entry if the police have a reasonable belief that the subject of the warrant resides in the home and will be present at the time of entry. *Solo-Cintrón v. United States*, 901 F.3d 29, 34 (1st Cir. 2018) (citing *Solis-Alarcón v. United States*, 662 F.3d 577, 580 (1st Cir. 2011).

The State Police established Mr. Ramos' presence at the Ford Street Property through their CSLI search. ECF 35-2 at 8. While the affidavit in support of the later physical search warrant makes passing reference to the DEA's suspicion that the individual residing at the Ford St. Property was Mr. Ramos, it does not point to any basis for such a suspicion apart from the CSLI results. This suggests that the CSLI search was the primary reason the police suspected that Mr. Ramos both resided at the apartment and was present at the time of entry. The CSLI search being illegal, its results cannot establish the required belief that Mr. Ramos resided at the property and that he would be present at the time of entry. *See Solo-Cintrón*, 901 F.3d at 34.

The State Police entered Mr. Ramos' apartment without a warrant or his consent. Mr. Polanco, who unlocked Mr. Ramos' door to allow the State Police entry, lacked the authority to consent to its entry. The State Police's entry of Mr. Ramos' apartment was thus unconstitutional under the Fourth Amendment. Whether the search that followed this entry is characterized as a search incident to arrest or a protective sweep, it and its results are illegal.

C. The Physical Search of the Ford Street Property with a Warrant

Just as for the CSLI search, for the physical search of Mr. Ramos' apartment the Government must show that the issuing magistrate had a substantial basis for

probable cause. The Government provided in its affidavit several bases for a magistrate to conclude that probable cause of criminality existed within the house: the DEA's belief that Mr. Ramos resided there, the police's search of Mr. Ramos' trash and discovery of cocaine residue, the CSLI that connected the 508 number and the Ford Street Property, and the fruits of the State Police's warrantless search of Mr. Ramos' apartment. Of these facts, only the trash search exists independently of the police's illegal inquiry into Mr. Ramos' CSLI and subsequent illegal entry into his apartment.

In *California v. Greenwood*, the Supreme Court held that the government may search trash placed outside a home without a warrant because the owner no longer maintains a reasonable expectation of privacy therein. 486 U.S. 35, 37 (1988). At first glance, this logic applies to the instant case, as the police searched Mr. Ramos' curbside trash in facts very similar to those in *Greenwood*. In Mr. Ramos' case, however, the trash from which a sample was taken was outside the Ford St. Property, which is by the Government's own admission a multi-family property. Divorced from the tainted evidence related to searches of Mr. Ramos and his cell phone, this trash pull is an insufficient basis for finding probable cause because it failed to connect a particularized suspicion between illegal activity and the specific dwelling in question, Mr. Ramos' apartment. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

D. Application of the Exclusionary Rule

The exclusionary rule permits a court to suppress the results of a search deemed illegal under the Fourth Amendment. *Murray*, 487 U.S. at 536 (citing *Weeks*

9

*v. United States*, 232 U.S. 383 (1914)). The rule exists to deter wrongful conduct by police and government officials, not to redress the constitutional violation suffered by the criminal defendant. *Davis v. United States*, 564 U.S. 229, 236–37 (2011). A court properly applies the rule, then, when the deterrent value outweighs the cost to society of suppressing the evidence. *Id.* at 237.

To mitigate the potential societal damage of applying the exclusionary rule, the Supreme Court has defined some per-se categories where it should not apply. One such exclusion is known as the independent-source doctrine. Under it, evidence revealed under an illegal search may be excluded from suppression if the government has independent sources for the discovery of that evidence. *United States v. Flores*, 888 F.3d 537, 545 (1st Cir. 2018) (citing *Murray*, 487 U.S. at 537). The independent-source doctrine requires that a court ask two questions: first, whether the decision to seek a warrant was made independently of what was discovered during the illegal entry, and second, whether the affidavit contains a sufficient basis for probable cause when stripped of illegally obtained material. *Flores*, 888 F.3d at 546.

The independent-source exception does not apply here because the facts fail the first prong. There is no evidence that the State Police would have sought a physical search warrant absent what it discovered after its searches of Mr. Ramos' cell phone and home. To the contrary, that the State Police waited weeks after conducting a trash pull to secure a CSLI warrant and to track Mr. Ramos' location suggests that the information obtained pursuant to the illegal CSLI search and the illegal home entry was critical in the decision to seek a physical search warrant.

A second potentially applicable category of exception is the good-faith exception. It requires that evidence not be suppressed "when the police act with an objectively reasonable good-faith belief that their conduct is lawful," or pursuant to a warrant that the police believe is valid. *See United States v. Levin*, 874 F.3d 316, 322 (1st Cir. 2017). Notably, however, the exception does not apply when the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 322 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

The good-faith exception would not save either the CSLI warrant or the physical search warrant. As stated before, the affidavit in support of the CSLI warrant contained only the bare assertion that a credible, confidential source had linked the 508 number to Mr. Ramos. Under *Levin*, it is thus ineligible for the good-faith exception because it so lacks any indicia of probable cause that the magistrate's official belief in its existence was unreasonable. The physical search warrant does not enjoy the protection of this exception either. The court in *Levin* emphasized that a reviewing court must consider all the attendant circumstances in evaluating whether an officer's belief that a warrant was valid was objectively reasonable. *See Levin*, 874 F.3d at 322 (quoting *United States v. Ricciardelli*, 998 F.2d 8, 15 (1st Cir. 1993)). The officers executing the physical search warrant can safely be presumed to have known the circumstances under which the CSLI warrant was issued, as well as the circumstances surrounding the entry into Mr. Ramos' home (indeed, the warrantless search and the search under warrant took place immediately

11

consecutively). The searching officer's belief that the subsequent physical search warrant was valid cannot be considered objectively reasonable given the illegal CSLI search and ensuing illegal entry of Mr. Ramos' home.

The final type of exception that the Government has offered to brief falls under the inevitable-discovery doctrine. Application of this doctrine requires a court to ask three questions. *United States v. Clark*, 879 F.3d 1, 5 (1st Cir. 2018). First, were there other, truly independent legal means by which the evidence would have been uncovered? Second, would use of those means have inevitably led to the discovery of the evidence? Finally, would application of the rule incentivize police misconduct or weaken constitutional protections?

In *Clark*, heroin and ecstasy on a defendant's person were uncovered during a police patdown conducted during his arrest. *Id.* at 4. The government conceded that the patdown was overbroad, but contended that the evidence would inevitably have been discovered in a more thorough search at the police station. The defendant argued that the third prong of the inevitable-discovery test favored him, and that sanctioning the search would encourage bad behavior. The First Circuit disagreed, determining instead that the searching police officer's fear for his own safety could not be considered misconduct, and thus that the inevitable-discovery rule should be applied.

Mr. Ramos' case is unlike Mr. Clark's. It seems possible, though not inevitable, that the police could have provided enough information in the affidavit to establish probable cause for either the cell-record warrant or the physical-search warrant

without the taint of illegality. But, as the Court has found, they did not. However, even if the discovery of evidence was inevitable, to apply the inevitable-discovery rule here is not appropriate. It could encourage law enforcement official to seek warrants without supplying the reviewing judicial officer with the facts necessary to ensure probable cause exists. The cell-record warrant the police received was vastly broad, and premised only on the assertion that a credible source had linked the number to the defendant. The weighty privacy considerations that attend such a search demand that the inevitable-discovery exception not apply.

IV. CONCLUSION

The Court GRANTS Defendant Jesus Ramos' Motion to Suppress. ECF No. 24.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

July 11, 2019